IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID FIFE, #2056260 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.  4:19cv802 |
| | § | |
| DIRECTOR, TDCJ-CID | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

*Pro Se* Petitioner David Fife, an inmate confined in the Texas prison system, filed a petition

for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to United States

Magistrate Judge Christine A. Nowak for findings of fact, conclusions of law, and

recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended

Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate

Judge.

## I.  PROCEDURAL BACKGROUND

Petitioner is challenging his Collin County conviction. Petitioner was charged by

indictment with aggravated robbery. Cause No. 219-80169-2015. (Dkt. # 15-22, p. 13). Petitioner

pled not guilty but was found guilty by a jury of the offense charged in the indictment. (Dkt. # 15-

22, p. 23). On October 15, 2015, Petitioner was sentenced to seventy-five years' imprisonment.

(Dkt. # 15-22, p. 23).

The Fifth District Court of Appeals modified the conviction of the trial court to accurately

reflect the presiding judge's name and, as reformed, affirmed the conviction on May 31, 2017.

*Fife v. State*, No. 05-16-00094-CR, 2017 WL 2351083 (Tex. App. May 31, 2017). (Dkt. # 14-3).

The Texas Court of Criminal Appeals ("TCCA") refused Petitioner's petition for discretionary

review ("PDR") on June 6, 2018. *Fife v. State*, PD-0379-18 (Tex. Crim. App. 2018). (Dkt. # 14-12).

On June 20, 2018, Petitioner filed a state application for writ of habeas corpus challenging his conviction. (Dkt. # 15-22, pp 46-111; Dkt. # 15-23, pp. 1-43). Applicant filed an amended application on October 5, 2018. (Dkt. # 15-23, pp. 75-107; Dkt. # 15-24, pp. 1-16). The state habeas court entered findings of fact and conclusions of law and recommended that Petitioner's application be denied. (Dkt. # 15-25, pp. 29-38). On February 27, 2019, the TCCA denied the application without written order on the findings of the trial court without a hearing. (Dkt. # 15-14).

Petitioner filed the instant federal petition (Dkt. # 1, p. 11) on October 28, 2019, and an amended petition (Dkt. # 8, p. 10) on March 3, 2020. Petitioner asserts the following grounds for relief:

1. He was denied effective assistance of counsel because his trial counsel failed to suppress evidence and to challenge the validity of the search warrant;

2. He was denied effective assistance of appellate counsel because his appellate counsel did not raise the issue of sufficiency of the evidence;

3. He was denied effective assistance of counsel because his trial counsel failed to object to and preserve the objections to prosecutorial misconduct; and

4. He is actually innocent

(Dkt. # 8, pp. 6-7). The Director filed a response, arguing that the claims are without merit and that Claim Four is unexhausted and procedurally defaulted. (Dkt. # 13). In his reply, Petitioner withdraws Claims Two and Four. (Dkt. # 16, pp. 10, 16). Accordingly, the Court will only address Claims One and Three.

## II.  FACTUAL BACKGROUND

The Fifth Court of Appeals of Texas summarized the facts presented to the trial court as follows:

> In November 2014, Melanie Ortiz worked at a Metro PCS store in Plano, Texas where she was a manager and sales associate. At that time, she had been working at the store for about two years. On November 25, Ortiz was training a new co-worker, Nada, when a man came in wearing sunglasses, a hat, and a white towel over his head. A black towel covered his mouth. As the man walked towards Ortiz and her co-worker, he lifted his shirt revealing two black handguns in his waist. The man then pulled out one of the guns, pointed it towards Ortiz and Nada and asked them to give him all the store's money. He also asked for all the memory cards. Ortiz gave the man $317 in cash and five packets of Nashua brand memory cards—two packets of eight gigabyte cards and three packets of four gigabyte cards. As the man walked out of the store with the money and memory cards, he threatened to come back and kill them if they called the police.

> Ortiz testified that she recognized the man's voice as that of someone who was a regular customer. The man worked at the Dollar Tree store located around the corner and would come into the store before he began his shift. Ortiz also recognized him based upon his height, slimness, and skin color. In court, Ortiz identified appellant as the robber. Ortiz testified that she noticed appellant coming into the store starting in September. He always had questions about his phone and sometimes came in two or three times a week. Ortiz testified that appellant usually wanted to be helped by former employee, Rudy Travizo, but that she also waited on appellant and helped him with questions about his phone. Ortiz recalled one instance where appellant asked about more internal space for his music. She recommended a memory card but appellant did not purchase one that day. She recalled another instance where appellant needed help with making a call overseas. Ortiz testified that she told the responding officers that the robber was a regular customer that worked at the dollar store and usually rode a white moped. Both the 911 call made by Ortiz and the video surveillance footage from the store were admitted into evidence and published to the jury.

> Andrea Rosas, the store manager for the Dollar Tree, testified that appellant worked for her for about two and half months prior to November 25, 2014. Appellant was already working at the store when Rosas started in August but he left in mid-October. When she was contacted by the police about whether she had an employee that drove a white moped, she gave them appellant's name and address.

> Rudy Trevizo testified that he worked for Metro PCS for a year until the end of October 2014 when he got fired. The police called him shortly after the robbery and asked him about a customer that Ortiz told them about who she believed was the robber. Based upon the description Ortiz had given the police, i.e., that the man was

tall and thin and she recognized his voice, Trevizo told police that it could be the man who worked at the Dollar Tree. Trevizo could not recall if the police told him about the white moped or he told the police about the moped. Trevizo identified appellant in the courtroom and testified that appellant came into the store regularly, sometimes several times a week. Appellant had a distinctive voice due to his accent and Trevizo could recognize him by his voice. Trevizo testified that the last time appellant was in the store was in early October.

Jae Joo owned two Metro PCS stores in November 2014, including Advanced Wireless, the Metro PCS store that was robbed. He testified that his stores sold two different brands of four and eight gigabyte memory cards—ADT and Nashua. He bought the Nashua cards directly from a vendor in Carrollton called Kayla International. On October 10, 2014, Joo bought forty Nashua memory cards—twenty four-gigabyte cards and twenty eight-gigabyte cards. Joo also testified that Ortiz called him after the robbery and told him that she recognized the voice and stature of the robber, that he was one of the store's customers, and that he used to work at the dollar store next to the Metro PCS store. Joo also remembered Ortiz telling him something about the customer driving a white moped.

In 2014, Jason Yun distributed Nashua memory cards through Kayla International for a period of six to eight months. He sold them to small retail stores, including Metro PCS stores. He testified that he was the exclusive distributor for Nashua memory cards in the DFW area and did not know of anyone else other than him that distributed the Nashua memory card. In April, 2014, he bought 1800 Nashua cards—1200 four-gigabyte cards and 600 eight-gigabyte cards. However, from May until the offense date, November 25, he only sold a total of 226 of those cards to cell phone stores in the DFW area—ninety two four-gigabyte cards, and one hundred thirty four eight-gigabyte cards.

Detective Scott Epperson responded to the robbery call and spoke with Ortiz at the store. Ortiz told him that the person who robbed the store had a very distinctive voice which she recognized and was 90% sure that it was a customer who had been at the store before. Ortiz could not give the officer the person's name but gave him information about Rudy. Both Ortiz and Rudy were sure that the suspect was an ex-employee at the Dollar Tree store. The next day, Ortiz told the detective that once she had time to think about it, she was now 100% sure that it was the ex-customer who robbed the store. After talking with the manager of the Dollar Tree store, the detective obtained an arrest warrant for appellant. Appellant was located at his girlfriend's apartment and arrested. Sharon Cruz, appellant's girlfriend was at the apartment when appellant was arrested. During a search of the apartment, officers found an unopened packet containing a Nashua eight-gigabyte memory card. Cruz told the officers that the card was hers and that she had bought it two years ago. No guns or ammunition were found in the apartment.

Sharon Cruz testified on behalf of the defense. At the time of the offense, she and appellant had been dating for about a year and a half. Cruz testified that appellant

usually stayed at her apartment in Dallas during the week from Monday through Saturday but went back to his father's house on Sundays so that he could take care of things around the house for his father. Cruz testified that appellant spent the entire day with her on November 25 and that they did not go into Plano until the Sunday after Thanksgiving. She also testified that she bought the Nashua memory card found during the search but could not remember exactly when or where, stating at one point that she thought it was eight or nine months prior to the search. She denied that she told the officers she bought the memory card two years ago.

Cruz also testified that her car had been stolen in August 2014, three months before the robbery. She testified that appellant's cell phone was in the car when it was stolen. Although appellant had ordered a new phone on the internet, he had not yet received it by the time he was arrested. Appellant used Cruz's phone from August until his arrest in November. Cruz testified that appellant bought the phone that was stolen at the Metro PCS store located on Spring Valley and Coit in Dallas. However, the service contract and receipt introduced into evidence by the defense showed that appellant bought the phone in February 2014 at Jae Joo's Metro PCS Advance Wireless store in Plano. Cruz also testified that appellant worked at the Dollar Tree store in Plano for two and a half months from August to October.

During the punishment hearing, appellant pled true to the enhancement paragraphs alleging prior convictions for a 1997 burglary and four 2003 aggravated robbery convictions. Appellant stipulated to the judgments admitted into evidence showing these convictions. When appellant committed the robbery in this case, appellant had been out of prison and on parole for about twenty months. Evidence was also presented showing that appellant had committed an aggravated assault while he was in custody in the Collin County jail awaiting trial in this case. Appellant testified during the punishment hearing and explained the circumstances leading up to the new aggravated assault offense.

*Fife*, No. 05-16-00094-CR, 2017 WL 2351083, at \*\*1-3. (Dkt. # 14-3, pp. 1-5).

### III.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir.

1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011). The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002); *Renico v. Lett*, 559 U.S. 766, 773 (2010). This Court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286

6

F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"In Texas writ jurisprudence, usually a denial of relief rather than a "dismissal" of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003*)*; *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Wesbrook v. Thaler*, 585 F.3d 245, 255 (5th Cir. 2009).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## IV. ANALYSIS

Petitioner asserts two claims of ineffective assistance of trial counsel. A court analyzes ineffective assistance of counsel claims under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A court will grant relief where a petitioner demonstrates (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689-94. Unless the petitioner establishes both—deficient performance and prejudice—his ineffective assistance of counsel claim fails. *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002).

Under the first *Strickland* prong, a petitioner must establish his counsel's performance fell below an objective standard of reasonable competence. *Yarborough v. Gentry*, 540 U.S. 1, 3 (2003). But when deciding whether counsel's performance was deficient, a federal habeas court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 at 688-89. Hence, a federal habeas court presumes that counsel's choice of trial strategy is objectively reasonable unless clearly proven otherwise. *Id*. at 689. Indeed, counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Id.* at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011). Furthermore, counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument. *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006).

Under the second *Strickland* prong, a petitioner must demonstrate his counsel's deficient performance prejudiced him. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003). He "must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "deficient performance does not result in prejudice unless that conduct so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result." *Knox v. Johnson*, 224 F.3d 470, 479 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 687).

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). It must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

A defendant's allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). Even when liberally construing pro se pleadings, "mere conclusory allegations on a critical issue [and] are insufficient to raise a constitutional issue." *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018). More specifically, conclusory statements are insufficient to sustain a claim of ineffectiveness. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001).

## A.   <u>Failure to Suppress Evidence/Challenge the Validity of the Search Warrant (Claim One)</u>

Petitioner first argues that he was denied effective assistance of counsel because trial counsel failed to challenge the validity of the search warrant and to seek suppression of the

evidence seized during the search of Petitioner's girlfriend's apartment. (Dkt. # 8, p. 6; Dkt. # 8-1, pp. 7-13).

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134 (citations omitted).

To have standing to seek to suppress evidence on the ground that it was obtained in an unconstitutionally unreasonable search and seizure, a defendant must show that he had a reasonable expectation of privacy violated by the government. *Rakas*, 439 U.S. at 139-40. "A defendant bears the burden of establishing standing to challenge a search under the Fourth Amendment—that he has 'a privacy or property interest in the premises searched or the items seized which is sufficient to justify a "reasonable expectation of privacy" therein.' Standing 'is a personal right which cannot be asserted vicariously.'" *United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992) (internal citations omitted), *cert. denied*, 506 U.S. 1007 (1992); *see also Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App 2002) (a defendant has the burden to show that he had a subjective expectation of privacy in the place searched that society is prepared to recognize as reasonable).

Furthermore, failing to file a suppression motion is not per se ineffective assistance of counsel. *Kimmelman v. Morrison*, 477U.S. 365, 384 (1986). A determination of ineffectiveness "depends on whether either a suppression motion or an objection would have been granted or sustained had it been made." *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987). Additionally, the defendant must show counsel's inaction amounts to deficient representation and

actually prejudiced the defense. *Strickland*, 466 U.S. at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Actual prejudice in the context of an unfiled suppression motion requires a meritorious Fourth Amendment violation and "a reasonable probability that the verdict would have been different" absent the excludable evidence. *Kimmelman*, 477 U.S. at 375.

Petitioner raised this ineffective assistance of trial counsel claim in his application for state habeas relief. Petitioner's trial counsel addressed the claim in an affidavit submitted to the state habeas court, stating his belief that Petitioner did not have standing to challenge the search:

*Fourth Amendment*

21.    Did police have a search warrant to search the apartment where Applicant was arrested? The State did have a search warrant for the apartment where Applicant was arrested.

22.    Did Applicant have standing to challenge the police search of the apartment? Counsel does not believe the Applicant had standing to challenge the police search of Sharon Cruz's [Petitioner's girlfriend] apartment.

23.    Did counsel seek to have evidence of what was found at the apartment excluded in other ways? No. The theft was of memory cards. Sharon Cruz testified that the memory cards seized from her apartment were hers, as she owned a Metro PCS phone and Mr. Fife did not own a Metro PCS phone. . . .

(Dkt. # 15-23, p. 68).

The state habeas court found that Petitioner lacked standing to challenge the search:

25.    Applicant alleges that counsel was ineffective for failing to challenge the search of his girlfriend's apartment;

26.    Counsel responds that police had a search warrant to search the apartment and that Applicant lacked standing to challenge the search;

27.    Applicant has failed to establish that he had standing to challenge the search of another person's apartment;

28.    Applicant has not shown by a preponderance of the evidence that counsel was deficient for failing to challenge the search;

29.    Applicant has not shown by a preponderance of the evidence that he was prejudiced by counsel's failure to challenge the search[.]

(Dkt. # 15-25, pp. 31-32). The TCCA denied Petitioner's state application without written order based on the findings of the trial court without a hearing, which constitutes an adjudication on the merits.

Petitioner fails to rebut the presumption of correctness to which the state findings are entitled. *Valdez*, 274 F.3d at 947. Petitioner has not shown that he had a subjective expectation of privacy in the place searched (Sharon Cruz's apartment); thus, he lacked standing to challenge the search or search warrant. Any suppression motion or challenge by trial counsel would have been meritless. Lacking standing to object to the search or search warrant, Petitioner cannot show that trial counsel's performance was deficient or that prejudice resulted from trial counsel's performance. *See Kimmelman*, 477 U.S. at 375; *Oakley*, 827 F.2d at 1025; *see also Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (because failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness, the petitioner has not established deficient performance); *see also Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections).

In his Reply, Petitioner does not dispute that he lacked standing to challenge the search warrant; rather, he seems to indicate that the Director's emphasis on standing misconstrues his Fourth Amendment claim that the search warrant affidavit contained false statements and that the state courts did not "apply the relevant and well established case law" in *Kimmelman* and *Franks v. Delaware*, 438 U.S. 154 (1978). (Dkt. # 16, pp. 3-10). Indeed, he states that "at no time—in both[] his amended state or federal petition—has [he] been challenging 'standing.'" (Dkt. # 16, p.

3). Petitioner's argument overlooks the fact that standing is dispositive of a Fourth Amendment claim. Thus, the state court's reliance on standing to resolve whether trial counsel was ineffective for failing to challenge the search was not unreasonable.

The Court finds that Petitioner has not shown that the state court's denial of Claim One resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Williams*, 529 U.S. at 402-03; *Childress v. Johnson,* 103 F.3d 1221, 1224-25 (5th Cir. 1997). In sum, Petitioner fails to show that the state court's application of the *Strickland* standard was unreasonable and that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 101. Accordingly, Petitioner's Claim One should be denied.

**B.** **Failure to Object to Prosecutorial Misconduct/Improper Closing Argument (Claim Three)**

In Claim Three, Petitioner argues that trial counsel was ineffective because he failed to object to the State's instances of vouching for the credibility of its witnesses and referring to evidence outside the record in closing argument. (Dkt. # 8, p. 7; Dkt. # 8-1, pp. 17-18).

It is clear that "[a] decision not to object to a closing argument is a matter of trial strategy," and, as such, is accorded great deference. *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992). Further, failing to object to the opposing counsel's jury argument in order to not risk antagonizing the jury by objecting is a matter of trial strategy. *Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992). Again, counsel is not required to make frivolous or futile objections. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Here, Petitioner asserts that the following italicized statements from the prosecutor were improper and should have been objected to by trial counsel:

> *I anticipate that Mr. Farkas [defense counsel] is going to get up here and hammer on Melanie Ortiz and try to rip her apart about the different ways she described him and how all of those differences must mean that she just came up with this out of the blue.*

> But remember one thing. She had a gun pointed at her. *She didn't ask for this to happen. She didn't know what he was going to do.* But you know what she did know? She knew the voice. She knew that voice. It may have taken her a little bit of time to place it. *But we all know that when you know a voice, you know a voice.* If it's somebody that you deal with and you hear talking to on a regular basis, you know who that is.

> . . . .

> Now, let's talk about the memory cards. We got some records. And Jason Yun, which appreciate, was very difficult to understand at times. But what he told y'all is that those cards he found at a trade show and the reason he brought those cards specifically to distribute in the Dallas Fort Worth area is because he knew they weren't being sold anywhere else. That's a business decision that allows him to be an exclusive distributor of those cards in this area.

> Now, they [the defense] want to tell you that there were all these cards out there, at least 600. Well, that was the order. And they had him do the math. We know that, at most, there were 130 cards in play in the DFW area between the date that he ordered them and the date of this offense. That's not a lot.

> What do we also know? We also know that they wanted you to believe that they had no idea the police were coming. They didn't have a clue. That just happened out of the blue and she was so shocked. But what did she tell you? She knew they were coming. They knew the night before. He had eight days—eight days to get rid of everything. And they overlooked one piece. They overlooked that one memory card that's rare. You don't see it everywhere.

> *And Detective Epperson is right. That corroborates everything.* Because you've got somebody who knows [Petitioner]. You've got someone who can tell you, I know him. I know he worked with Rudy. And I know he worked at the Dollar Tree. I can't tell you his name, but I know him. At no point in time does that change for her. Not in that 911 call. Not in her discussions with Officer Nichols. And not in her discussions with Detective Epperson.

> It's all semantics. It's her recovering from having a gun pointed at her and being robbed. She tells them, I know that voice. I know that voice. And she did. *And*

*everything came together. And everything linked up. And they got that search warrant*. And they were looking specifically for those cards. And that's exactly what they found. It wasn't surprising. It's not a coincidence.

And when we talk about proof beyond a reasonable doubt and what that actually means, it's not specific to any one thing that you heard. You take everything together. Use your common sense. Put all the pieces of that puzzle—it's like that puzzle we put up. You got a bunch of pieces. And when you put them together, your ultimate question is, did this Defendant commit this offense? And the answer to that is yes.

I'm going to ask that you go back there and that you return the only just verdict and the only verdict that is supported by evidence and find him guilty because *we wouldn't bring you anything that wasn't credible*.

. . . .

(Dkt. # 14-17, pp. 128, 145-47; Dkt. # 8-1, p. 17).

The state habeas court made the following findings regarding Petitioner's claim that trial counsel was ineffective for failing to object to the prosecutor's closing statements[1]:

51.    Applicant complains that counsel was ineffective for failing to object [to] statements made by the prosecutor during closing argument;

52.    Applicant complains about the prosecutor's comments (a) that she anticipated that the defense attorney was going to stand up and attack the eyewitness's description of the robber, (b) "But, we all know that when you know a voice, you know a voice," and (c) "I'm not going to bring you things that we don't find to be credible";

53.    During closing arguments, a prosecutor cannot vouch for the credibility of its own witnesses by giving unsworn testimony;

54.    The first two complained-of statements do not remotely vouch for the credibility of any witness;

55.    The third statement (that the prosecutor would not bring evidence that was not credible) was made as part of the State's explanation as to why it did not present the video of Applicant's interview with police;

56.    The statement was that the State did not find the interview to be credible and thus, did not present it to the jury;

---

[1] In the Order Designating Issues, the state habeas court did not direct trial counsel to address this particular issue in his affidavit. (Dkt. # 15-23, pp. 50-54).

57.     The prosecutor was not vouching for the credibility of any of its witnesses in making this comment;

58.     The State did not actually vouch for the credibility of any of its own witnesses in the complained-of statements;

59.     Applicant has failed to show by a preponderance of the evidence that counsel was deficient or that he was prejudiced by counsel's failure to object to the statements.

60.     Applicant also complains that counsel was ineffective for failing to object to the State's argument that the victim "didn't ask for this to happen," because it was outside the record;

61.     Proper jury argument includes four areas: (a) summation of the evidence presented at trial, (b) reasonable deduction drawn from that evidence, (c) answer to the opposing counsel's argument, or (4) a plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011);

62.     The complained-of statement was made while the State was recounting the robbery;

63.     The fact that the victim did not ask for Applicant to rob her was a reasonable deduction from the evidence of the robbery that was presented a[t] trial and was proper;

64.     Applicant has not met his burden of proof by a preponderance of the evidence that counsel was deficient;

65.     Applicant has not met his burden of proof by a preponderance of the evidence that he was prejudiced by counsel's failure to object to the State's argument[.]

(Dkt. # 15-25, pp. 34-36). The TCCA denied Petitioner's state application without written order based on the findings of the trial court without a hearing, which constitutes an adjudication on the merits.

Under Texas law, proper jury argument falls into one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to argument by opposing counsel and (4) a plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim.

App. 2011). The Fifth Circuit has recognized that these four areas are acceptable under Texas law. *Buxton v. Collins*, 925 F.2d 816, 825 (5th Cir. 1991). Jury argument that vouches for or questions the credibility of a witness is proper if it involves a reasonable deduction from the evidence. *George v. State*, 117 S.W.3d 285, 288 (Tex. App. 2003).

The state habeas court found that trial counsel's performance was not deficient. Specifically, the state court found counsel did not fail to object to the State's closing argument because the prosecutor's argument was proper and did not vouch for the credibility of its witnesses and inject matters from outside the record. The state court found that the prosecutor properly drew inferences based on the evidence at trial. The prosecutor's statement, that she anticipated that the defense attorney was going to attack the eyewitness's description of the robber, and her statement, "But, we all know that when you know a voice, you know a voice," were reasonable deductions from the evidence and addressed defense counsel's attack on the eyewitness's differing descriptions of Petitioner. Petitioner has failed to show that any of these statements added credence or weight to the witness's testimony. The prosecutor's use of "we know" was simply to emphasize what had been shown at trial and did not inject matters from outside the record. The prosecutor's comments, that the eyewitness "didn't ask for this to happen" and "didn't know what [Petitioner] was going to do," were made during the prosecutor's narration of the robbery and reasonable deductions from the evidence at trial. Specifically, the fact that the eyewitness did not ask for Petitioner to point a gun at her and rob the store was a reasonable deduction from the evidence of the robbery that was presented a trial and was, therefore, proper. The comments were not based on evidence outside the record. The prosecutor's statement that she would not introduce evidence that was not credible was made as part of her explanation that the State did not present the video of Petitioner's interview with police because it did not find the interview to be credible.

This court is bound by the state habeas court's finding that the argument was proper under state law. *See Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000) (observing the long-standing principle that federal courts do not sit to review questions of state law); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) (federal habeas courts "do not sit as a 'super' state supreme court" to review errors of state law). Because the state court found the complained of arguments were proper under state law, Petitioner cannot show counsel was deficient in failing to object. Further, Petitioner cannot establish that, but for counsel's failure to object, there is a reasonable probability that the result of the trial would have been different. Petitioner has failed to satisfy his burden of proof in rebutting the presumption of correctness afforded the state court's findings. Petitioner attempts to relitigate his arguments presented to the state court without rebutting the findings with clear and convincing evidence. Moreover, he has failed to overcome the "doubly" deferential standard that must be accorded counsel in the context of 28 U.S.C. § 2254(d). Petitioner has failed to show either that the state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or that the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Furthermore, although not specifically addressed by the state habeas court, the prosecutor's argument—"And Detective Epperson is right. That corroborates everything. . . . And everything came together. And everything linked up. And they got that search warrant"—was not improper vouching for the credibility of Detective Epperson. The prosecutor's argument was a summation of the evidence linking Petitioner to the crime and providing the basis for Detective Epperson to get the search warrant. Again, Petitioner has failed to show either deficient performance or prejudice from trial counsel's failure to object to this closing argument. Petitioner has failed to

18

show that there was no reasonable basis for the state court to deny relief. *See Richter*, 562 U.S. at 98. Accordingly, Claim Three should be denied.

## V. CONCLUSION

Petitioner has failed to show that his claims have merit. He has failed to overcome the presumption that, under the circumstances, the challenged actions of his trial counsel might be considered sound trial strategy. *See Strickland*, 466 U.S. at 689. He has also failed to prove that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *See id.* at 694. Above all, in each of his claims, Petitioner has failed to rebut the presumption of correctness to which the state court findings are entitled, *see Valdez*, 274 F.3d at 947, and he has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, *see* 28 U.S.C. § 2254(d); *Richter*, 562 U.S. at 97-98; *Childress*, 103 F.3d at 1224-25. In sum, Petitioner has failed to show that there was no reasonable basis for the state court to deny relief. *See Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed.

## VI. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding

that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting that "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El*, 537 U.S. at 336-37 (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court find that Petitioner is not entitled to a certificate of appealability.

## VII.  RECOMMENDATION

It is recommended that the above-styled petition filed under 28 U.S.C. § 2254 be denied and that the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 3rd day of May, 2022.**

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

21